Now, the other Cottonwood case, Cottonwood Environmental Law Ctr. v. Leanne Marten is the last case on the calendar for argument. The final case, First National Bank of Sioux Falls has been dismissed. Good morning, Your Honors. I am still John Meyer and I'm still here on behalf of Appellant Cottonwood Environmental Law Ctr. I'd like to reserve five minutes for rebuttal, please. Cottonwood is asking the court to reverse a district court order that dismissed our complaint. We challenged three old growth timber sales in the Greater Yellowstone ecosystem, as well as the federal government's failure to prepare supplemental NEPA analysis on the forest plan that guides those timber sales. Those projects are being logged right now as we speak. I got an email from the federal government 10 minutes before we started argument saying they're about halfway through that logging. In 2018, the federal government submitted a notice in the Federal Register that said direction guided by new information and science is needed to address impacts reasonably expected to occur as a result of climate change. And so that is new information and change circumstances, Your Honor. And so we asked the federal government to prepare a supplemental NEPA analysis on those timber sales saying, hey, your current forest plan that was prepared in 1987 does not address climate change. And you've said that you need a plan in place that addresses climate change. The Forest Service said, no, we're not going to do it. And the district court dismissed our complaint saying the federal government cannot be required to prepare supplemental NEPA on a forest plan. And the reason the federal government is saying that they're basically relying on a case, Norton v. SUA, Southern Utah Wilderness Alliance. The government is saying there's no ongoing agency action. And in SUA, the bear management plan, they didn't challenge any timber sale or any project or anything. They didn't challenge any sort of action, site specific action that implemented that management plan. So should we divide this case up into three parts? One having to do with the plan itself. And do you dispute the ongoing action? Yes, Your Honor. Absolutely. How? The plan is ongoing action as demonstrated by the fact that the Forest Service has amended the plan with the challenged Bozeman Municipal Watershed Project. And so if the plan was not ongoing, if it was done, it couldn't be amended. But it is being amended. So that must mean it's ongoing agency action, Your Honor. And the exact same thing. And SUA did not address that issue because the plaintiffs in that case challenged a bear management plan. And the court in that case said the action's complete. However, in the case of Marsh v. Oregon National Natural Resource Council, the US Supreme Court cited Army Corps regulations that talked about supplementing NEPA analysis for a plan. And in this case, we're saying the plan can be supplemented, Your Honor. I'm sorry. I couldn't hear you. In this case, we're saying the NEPA analysis for the plan can still be supplemented. Okay. So with respect to the cutting three, I guess, 3,000 acres, is it clear cutting or is it selective cutting? How's it being done around the reservoir? Your Honor, my understanding is that it's complete. They're now moving away from the roads and moving into areas that were proposed. But are they cutting down every tree around the reservoir or are they cutting down some trees? All the cutting around the reservoir has been done, Your Honor, everything on federal land. They're now moving away from the reservoir into forest service land, away from homes, away from the reservoir. No, what I'm trying to figure out is on any individual acre, are they cutting down every tree or are they only cutting down some of the trees? Some of it's selective, Your Honor, yes. Okay. And if what you're saying is that the new environmental science really sort of has to do with global warming, say, do you have to at least allege that the selective cutting of 3,000 acres will have a significant impact on global warming? Your Honor, we have alleged that there's new information in science regarding logging and forest not growing back because of climate change. And we're saying that has a huge impact on our national forest and on humanity, essentially. Okay, these 3,000 acres. Well, that's one timber sale, but we're challenging three timber sales. Yes, Your Honor. Okay, so maybe you can correct my understanding of what's going on here. But I thought under case law that an original forest plan, once it's complete and in place, it no longer qualifies as an ongoing federal project. But if along the way, years later, they decide to revise it or to amend it in some way, then they need to conduct a supplemental EIS regarding the changes or new information or whatever, whatever's prompting the revision. And that's happening here. And in fact, as we know, they're underway now with... And we knew they were underway for a while, and now we know we've been advised that a new plan is about to be finalized at the end of this month for the Custer-Gallatin National Forest. So two questions. One, why do you even state a claim? Because, you know, under our case law, the plan was final and it was not an ongoing project. And two, why isn't the case, at least the first claim, moot? Yes, Your Honor. Can I start with your second question? Sure. The case is not moot because the federal government filed a 28 J letter saying the new forest plan that is about to be implemented does not replace the old forest plan in terms of these challenged timber sales. They've said that will continue to guide and manage these timber sales. That gets to the second cause of action. Okay. So in terms of the first cause of action, Your Honor, my recall of the complaints is that our first claim was that the Forest Service violated an EBO by failing to prepare supplemental analysis for the forest plan in light of new information and signs. Okay. And our second claim was that the Forest Service violated an EBO by failing to prepare supplemental analysis for three challenged site specific timber sales. And so we provide the Forest Service... As I understand the government's 28 J letter, your claims is to... Your claim that second cause of action or count as to those three projects, counts as to those three projects, still has some potential viability. Yes, Your Honor. And we are... Assuming that you've alleged sufficient facts to state a claim for relief with respect to any one of those claims. Yes, Your Honor. Right? Yep. However... So let me ask you this. There's one project, I forget which one it was, whether it was the North Bridges or the North Hebgen. One of them, they said, we don't have to do anything because there's a categorical exemption. I can't remember which project that was. That's the North Bridger project, Your Honor. What's wrong with that? I mean, it sounds like that sounds right. Every timber sale, every project has to be compliant with the forest plan. And so if the forest plan doesn't address climate change, it's not possible for the site specific project to address climate change either. It would be incredible for the Forest Service to say, because we prepared this under a categorical exclusion, we do not have to prepare someone on NEPA, but we do under these other projects in which we prepared... Yeah, Your Honor. As I understand it, that project falls under the... What is it? The Healthy Forest Act? Healthy Forest Restoration Act. Yes, Your Honor. However, the government still has to prepare NEPA analysis for those projects. Okay. That's still done. It might be done through a categorical exclusion. Let me follow up on one of those projects. The EIS for the BMW project does address climate change in some detail. So what new environmental information do you think warrants an SEIS for that particular project? It's a 12B6. I'm looking for that in the complaint itself. And I wanna make sure that I what you're relying on when you say that new environmental information hasn't been considered such that a supplemental EIS is required for that project. Yes, Your Honor. On page... Paragraph... Is it the 2017 article? Yes, Your Honor. It's the 2017 National Academy of Sciences article. That article says that when you cut down trees... Anything else? I just wanna pin this down. So the new information essentially is coming from the 2017 article, right? And also, the change circumstance in which the federal government has acknowledged that they need to prepare a new plan to address climate change. And they're saying, we don't have a plan in place to... And then let me ask for a clarification here. On page three of the complaint that's at ER 19, paragraph 12, it says, to support the statement, the article cites the scientific papers published by the U.S. Forest Service. So is the 2017 article relying on information that the government had in the year 2000? Per this allegation in the complaint? That goes to the home ignitability issue, Your Honor. That does not go to the trees not growing back. Those are separate things. Okay. Okay. So I just wanna make sure I understand. In order to figure out whether there's new information on climate change that wasn't accounted for in the EIS, I looked at the 2017 article and then the government's acknowledgement. Those are the two categories of evidence that you're relying on? Yes, Your Honor. Okay. Thank you. And I would add that because we're on a 12 B6... Let me ask you this. When they did the initial EIS for the Bozeman Municipal Water Project, whatever it was, whatever it is, did they address climate change in that EIS? Your Honor, they did not address the issue that when you log and then you have drought because of climate change, trees do not grow back. And that is the main climate change issue that we're asking the Forest Service to reevaluate because we submitted a 2017 National Academy of Sciences article that says forests may not regenerate because of climate change after they're logged. And the Forest Service said in their EIS for the BMW project that all these forests will regenerate, there's no issue with that. So that's the significant new information? Yes, Your Honor. And is that... I haven't looked at the complaint in a while, although I have it here. Is that sort of teed up in the complaint? Broadly speaking, it says that the Forest Service did not address new science and information regarding climate change. All right. That allegation, Council, the global warming may make deforestation permanent. I don't see that allegation in the complaint, so I guess we'll have to go back to the 2017 article to see if it's there. Yes, Your Honor, and we cited that in our... I don't know that that was teed up properly because the EIS did address climate change, and so something in the 2017 article's gotta change that picture. Yes, Your Honor, and that is the line in the 2017 article that says the trees will not grow back, and that is the climate change issue in this case because the Forest Service has said that all these forests will regenerate, and the article says they will not. All right. I think we've got your argument now. I know you wanted to save a little bit of time. Do you wanna save the rest of your time? Can I go back real quickly and just address the first issue that the forest plan is still ongoing. It's not going to be when the new plan is issued because the Forest Service in this 28J letter said it's going to continue, and so we can still challenge that plan even after the new plan is in place because that old plan continues. So the Forest Service is relying on an old plan that does not address climate change. There's no management direction at all in the old plan, and it's going to continue relying on that old plan to implement site specific projects that are relying on faulty science, and so I'm just gonna let it go right there, Your Honor. Including the two projects that you're worried about. Yes, Your Honor. All right. Thank you, Your Honor. So let's hear from the government. Good morning, Your Honors, and may it please the court. My name is Ben Richmond, and I represent Federal Appellees. Before beginning, Your Honors, I just wanna provide some broader context on this case. So essentially, what's happening here is the Forest Service for the past six years has been working to create a revised forest plan for the Custer Gallatin National Forest, and as we submitted in our 28J letter, that process came to an end. The plan was issued just this past month. What plaintiff is alleging here in the complaint is that solely because the Forest Service undertook this revision process, that in itself requires yet more NEPA analysis, both for the 1987 Gallatin plan, as well as three site specific projects approved pursuant to that plan. And Your Honor, those... Why are they wrong? If the new science was enough to spur a whole new plan, why isn't it required with respect to specific projects? Your Honor, so for the claim is the 1987 Gallatin plan, it's soon moved, and it's precluded by binding Supreme Court precedent in Norton versus Sewa. In terms of the site specific projects here, one is covered by categorical exclusion, and the other two, plaintiff just fails to allege significant new information in the complaint, which would require supplemental NEPA analysis. But isn't it at least some indication that new analysis is needed if you undertook, I guess, based on new information, a whole new plan? Well, as the 1987 plan, new analysis would be duplicative of, for example, the NEPA analysis that's required to create the revised forest plan. It wouldn't make sense to do a similar analysis as the 1987 plan. But just with respect to these two projects? Right, so with respect to the BMW and the North Hebden projects, Your Honor, what plaintiff is focusing on in the allegations here are revisions related to climate change. But the site specific projects, both for the BMW and the North Hebden projects, Your Honor, already include extensive documentation about climate change. It did address climate change, but what council is saying today is that the new information that deforestation is permanent, that's not sufficiently addressed in the current EIS, and he's saying that that new information can be found in the 2017 article, which he did cite to in the complaint. How do you respond to that? So with respect to the 2017 article, Your Honor, plaintiff fails to allege, first, how a single article alone could require supplemental NEPA. That would impose an intractable supplementation requirement for the Forest Service. Every time a member of the public finds an article related to a project and brings it to the service's attention, if that requires supplemental NEPA, that would impose a pretty extreme barrier in terms of trying to implement site specific projects. Also, in the complaint, there are no facts. If you go back to the four corners of the complaint, there are no facts in that complaint which tie that article to previously... Let me... Okay, go ahead. I don't wanna interrupt you. Go ahead, finish, and then I'll... I'm sorry, Your Honor. The complaint just does not tie the article itself and anything in the article to previously unstudied impacts of these projects. All the complaint actually says, and this is at... I believe it's ER 19, is that the Forest Service failed to study the NAS article as to the 1987 Gallatin Forest Plan. It doesn't have anything in the complaint specifically connecting the National Academy of Sciences article to the site specific projects at issue here. So in the absence of... Go ahead, Your Honor. Are you finished? Yes, Your Honor. Okay, here's something I wanna ask you. So this case got kicked out under 12B6. I understand the district court's ruling with respect to the first cause of action, account one, regarding the forest plan, whether it's an ongoing federal action. And I also... And the further causes of action with respect to the one site specific project that has a categorical exclusion, I understand, and the allegations that the marking of the trees constitutes new action, I get. But with respect to the BMW project, he does... But why does he have to allege so specifically this one study and do everything that you just alleged, and allege the kind of facts that you just alleged, in order to state a claim for relief under Rule 8 or 12B6? In other words, he does allege that there's new information and science regarding climate change. Why isn't that sufficient for purposes of the BMW site specific project? Well, as the BMW project, Your Honor, the project already considered the effectiveness of the vegetation treatments at issue here. So in terms of this NAS article somehow being new, the project documentation, which Plaintiff referenced in his complaint, is already talking about the effectiveness of the vegetation treatments. What's required for Supplemental NEPA is alleging facts which, if true, would demonstrate that the projects have a significant impact on the environment not previously considered. And in the absence of real facts alleged in the complaint that, in any way, link the science in this article to undiscovered impacts associated with this project, it's insufficient. And Your Honor, I can address some of the other issues here as well. I could talk about, for example, the tree marking claim or the categorical exclusion as the North Bridgers project. In terms of the North Bridgers project, our position is that HFRA categorical exclusion applies. Plaintiff is attempting to amend its complaint on appeal and challenge specifically the CE, but no challenge to the CE was actually alleged in the complaint. In any case, that argument on appeal to try to invalidate the CE related to inconsistency with a forest plan, but again, Plaintiff never challenged the forest plan at issue here. The statute of limitations to challenge the 1987 forest plan has elapsed. And also, in Alliance for Wild Rockies, a District of Montana case in 2020, that court held that the categorical exclusion applied to the North Bridgers project. In terms of the tree marking claim... Let me ask you this. Yes, Your Honor. So I wanna go back to the BMW because that's the only... For my purposes, that's the only issue that gives me some pause about what the district court did. And I guess, what is the language within the original BMW EIS that you contend adequately addresses climate change? Yes, Your Honor. I have some of the record sites here, and I can read them from the record if you'd like. So if we look at the excerpts of the record for the BMW project on 142 to 143, and supplemental excerpts of the record, 116 to 117. And what this discussion of climate change is for the BMW project, it's evaluating what effects of climate change would have on this specific project and on the forest, how that would change the forest. And it also does an analysis in terms of whether the project itself, the project activities here would contribute to climate change and global greenhouse gas emissions. So it both looks at how the climate is changing the forest and how the forest project here might change greenhouse gas emissions. So it's both sides. And based on that analysis here, there's no new information being alleged which would trigger the requirement for supplemental NEPA. Well, if you assume that the article has to be taken into account, isn't that new information and is the article... The idea behind the article that the forest will not grow back, is that taken into account anywhere? So assuming that the article does have to be taken into account, and again, our position is that it should not because it was not adequately alleged in the complaint, especially as the site specific projects here. What the article is saying is it's questioning the effectiveness of thinning and other vegetation management practices that are being implemented in the BMW project area. But the BMW project did consider the effectiveness of its treatments. And actually what it elected was, in light of the risks of climate change and the stresses that poses on the forest and wildfire risk, that actually the correct decision here is to undertake the project. That was very necessary to secure the city of Bozeman's municipal water supply. So for that reason, plaintiff has failed to allege any significant new information. Your honors, I also wanna talk briefly about the claim related to markings on trees. And for that claim, your honors, I think it's important just to look at the four corners of the complaint. The complaint says, before the projects were approved, quote, trees painted in the project area were marked for logging, and then afterward, quote, many of the trees were painted over in a way that allows them to be cut. That's at ER 29. The factual allegations here in the complaint are just insufficient to state a claim. Plaintiff doesn't allege any facts which, if true, would show that these markings have departed from ordinary project activities. The BMW project involves thinning of the forest, and in order to thin the forest, the Forest Service marks trees. Nothing about these alleged markings in the complaint, these bare allegations about markings, really mean that there's a significant impact here. And for example, the complaint also, it doesn't allege how many trees would be affected. It doesn't allege whether the markings here actually mean the trees would be cut. The Forest Service, depending on the prescription, uses markings to signify leave and cut. So it just, we don't know from the complaint what the markings actually mean, or why the trees being marked here would constitute, even if they were cut, some sort of significant impact on the environment. And so solely because we're just left wondering what the complaint means with the absence of adequate factual allegations, that in itself means that plaintiff has failed to state a claim. So, your honors, I do briefly wanna talk about the first claim as the 1987 Gallatin Plan. I wasn't exactly sure from arguing, but it seems that plaintiff may have conceded that that claim is moot. That is our position, that the first claim is the Gallatin Forest Plan is moot. As I said before, the Forest Service has undertaken the six year planning process to develop a revised Custer Gallatin Forest Plan. And when that plan goes into effect later this month, the 1987 plan will have no effect independent of previously approved site specific projects. So solely as the plaintiff's claim, just against the 1987 plan, that claim is moot. No effective relief can be delivered against the 1987 plan.  If you didn't have the new plan, would the old plan have been ongoing agency action? No, your honor. Norton versus Sewa, a binding Supreme Court precedent, holds that the plan is not an ongoing agency action. So in Norton versus Sewa, the Supreme Court looked at a resource management plan, and it found that the action associated with that plan was completed when the plan was approved. And for that reason, there was no continuing agency action associated with the plan, and no supplemental NEPA claim essentially could arise associated with that plan. In that case, the new information at issue is increased use of off-road vehicles. So as in Sewa, so too in this case. A forest plan is a land management planning document. The action associated with a forest plan is completed when it's approved. Now, there is no continuing action as to a plan approved in 1987. That would allow a supplemental NEPA claim. Plaintiff, counsel for plaintiff in the argument is talking about how potentially site-specific actions and amendments and revisions make this some sort of ongoing agency action. But in fact, those site-specific actions and amendments and revisions are all themselves actions subject to NEPA procedures per NIFMA regulations. So those changes, parts of the normal planning process for the Forest Service don't make the forest plan in any way ongoing. This court has also applied Norton versus Sewa in cases like Center for Biological Diversity versus Salazar. That was a case about a mining plan of operations. And, you know, really the big takeaway from this first claim is it would just be duplicative to require NEPA analysis as to the superseded 1987 plan when, you know, NEPA is already being conducted as the revised forest plan. So let me look. I want to go back. I'm still I'm sorry to be so focused on the BMW. Oh, absolutely. Your honor. Site-specific plan. But I was looking at the supplemental excerpts of record was at 116 to 117. Is that what you pointed us to? I believe so, your honor. I'm just getting out those excerpts of the record to look at. There it does state meaningful and relevant conclusions on the effects of a relatively minor land management action such as this on global greenhouse gas emissions or global climate change are neither possible nor warranted in this case. So that that all that was all about nine about 2011. Correct or so? Correct, your honor. The BMW project. But then, you know, years later, the Forest Service acknowledges that there's been a significant circumstances with respect to global change that requires a new forest plan, you know, some revision, a new a new forest plan for the Custer-Gallatin National Forest. Why isn't that significant? New information for purposes of the ongoing BMW site-specific EIS. So respectfully, your honor, the the revisions, the forest plan here, you know, it's a multifaceted revision to the plan. You know, the management direction updates related to climate change were one of 11 different objectives for the plan. And again, one of the primary purposes of the plan was to create a consolidated forest plan for both Custer and Gallatin forests to put that together to create a consolidated planning document. So, you know, the Forest Service here didn't really concede anything about climate change related to the plans that, you know, the forest plans themselves aren't the only direction that the Forest Service uses. It establishes guidance and other documents and those relate to climate change. So, you know, here, the revision itself, it was a complex process. You know, the revisions related to climate change were one of 11 different purposes. That revision in itself is not an admission by the Forest Service that climate change needs to be addressed. And your honor, specifically as to revisions related to climate change, there was this analysis in the BMW project as well as the North Hebgen project. I don't, you know, I don't see any allegations when you go back to plaintiff's complaint. The climate size has meaningfully changed such that the analysis done in these projects wouldn't be sufficient, you know, between 2011 and now, you know, there's no specific allegation here as to how the climate science changed in a way that would affect remaining action in these projects. And again, I just want to bring the court back to the complaint when we look at the 27 NAS article. The complaint, it does not even allege that the NAS article needs to be addressed as to the site specific projects. It's devoid of any allegations that the 2017 article affects the site specific projects. If you look at, I believe it's at ER 19, you know, the only mention that they do lay out that this article exists. But the application and the complaint is that it wasn't considered as to the 1987 Gallatin plan. And of course, a 2017 article was not addressed in the 87 plan. But for other reasons, that claim is foreclosed. So, your honors, unless there are any other questions for these reasons stated here that the 1987 Gallatin plan claim is moot and it's foreclosed by Norton versus SUA and because plaintiff failed to allege any significant new information as to climate change as the site specific projects, as well as the categorical exclusion, not exempting a claim against the North Bridgers project. For these reasons, the dismissal of the district court should be affirmed here. Thank you. Thank you, counsel. Your honors, I heard the word duplicative twice during that argument. And the fact of the matter is that the Forest Service has never done NEPA analysis for the 1987 forest plan. So, they're guiding these timber sales. They're logging old growth timber sales with no mention of climate change at the forest plan level. And the Forest Service has said, we need climate change direction at the forest plan level. The case is not moot in terms of the first claim because that forest plan continues to guide all these old growth timber sales, even after the new plan is put in place, that new plan does not replace the old plan. The old plan is going to continue to guide these new, excuse me, the old plan is going to continue to guide the old timber sales that have already been approved. The EIS for the timber sales says, well, this is a very small project and it's not going to have a big impact. But when you look at all of those projects together, the cumulative impacts of those projects, now you start talking about a significant, serious impact. And that was never addressed at the project level. And that's why we needed the Forest Service to do the analysis at the forest plan level, because that's when you start taking a bigger picture look at these things. NEPA requires the Forest Service to conduct analysis to the fullest extent possible. The Forest Service has prepared Supplemental Endangered Species Act analysis for this exact same forest plan and this exact same timber sale. Now, when you apply NEPA to the fullest extent possible, the Forest Service can also prepare the same analysis. Cottonwood has a member named Pete Harned, and Pete lives next to the Bozeman Watershed Project timber sale, and he's a runner- Councilor, let me ask you this, I know that the complaint, that issue here is an amended complaint, I can't recall offhand how many rounds of amendment you had, whether this is the only round of amendment. Was there an issue with the motion to dismiss stage as to whether, or request by the plaintiffs to amend the motion? Amend the complaint to shore up the allegations of the climate change, the research as to climate change, how that's changed since these EISs were prepared on these specific projects at issue? Your Honor, we did not request to amend the complaint, and the reason we did not request that is because we, the court said point blank that requiring supplemental NEPA for the forest plan is not required, and that's a legal issue, that's not a factual issue, and so we said if we want to protect our entire national forest from climate change, we need to take this to the Ninth Circuit now to get relief. Your Honor, there is a Cottonwood member named Pete Harned, Pete lives right next to the BMW timber sale, he's been running there four to seven days per week for the last five to ten years. He said, he submitted a declaration to this court saying, I've been running here for ten years, and there's all these new timber sale markings, it's all the forest service, and we give them the locations, and they just brushed us off, and they never decided, they never considered in a NEPA analysis and any sort of supplemental information report, whether that information was new and whether that required supplemental NEPA analysis, Your Honor. We can certainly provide the information in a declaration to this court, and if the court would like, we can certainly amend the complaint to add that information as well. Your Honor, if you have no further questions, I'm just going to end with saying, the future of our species depends upon protecting our national forests, and if we protect them, they will protect us. And so that's why we are asking this court to reverse the district courts that we can protect these tracts of old growth outside of Bozeman as soon as possible. Thank you. All right. Thank you very much, counsel. On both sides for your argument today, the matter is submitted, and that concludes our argument calendar for the day and for the week. So the court is adjourned. All rise.
judges: PAEZ, NGUYEN, Eaton